## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

| | | |
|---|---|---|
| Small Business Financial Solutions, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. GLS-21-811 |
| | ) | |
| Corporate Client Services, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Pending before this Court[1] is "Defendant Corporate Client Services, LLC's Motion to Dismiss Amended Complaint," (ECF No. 56) ("Motion"), which the Plaintiff Small Business Financial Solutions, LLC ("Plaintiff") opposes. The issues have been fully briefed. (*See also* ECF Nos. 57, 58). This Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth more fully herein, the Motion is **GRANTED**.

### I.     BACKGROUND

#### A. Factual Background[2]

Plaintiff is a Delaware limited liability company with a principal place of business in Maryland. (ECF No. 42, Second Amended Complaint[3], ¶ 1). Plaintiff provides funding to small businesses in the form of unsecured loans. (*Id.*, ¶ 8). Defendant Corporate Client Services, LLC ("Defendant"), is a telemarketing seller of debt relief services located in Florida. (*Id.*, ¶¶ 2, 9). Defendant, by searching for Plaintiff's UCC-1 filings, targets Plaintiff's customers ("Debtors"),

---

[1] The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 24, 25).

[2] Unless otherwise noted, the facts are taken from the Second Amended Complaint, ECF No. 42, and are construed in the light most favorable to the non-moving party, Plaintiff. This Court assumes the facts to be true. *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

[3] *See* Section I.B. for the procedural background in this case.

all of which are located outside of Maryland. (*Id.*, ¶¶ 39-261).[4] Defendant contacts Debtors by phone to sell them debt relief services. (*See, e.g.*, *Id.*, ¶¶ 10, 12-13, 31, 42, 64, 86, 92, 99, 111, 123, 129, 135, 171, 237). At the time of Defendant's solicitations, Debtors are still making payments to Plaintiff. (*Id.*, ¶ 29). During the phone calls, Defendant induces Debtors to breach their contracts with Plaintiff by making false statements about the terms of those contracts, providing false legal advice about the obligations Debtors owe to Plaintiff, and falsely suggesting that Defendant has a working relationship with Plaintiff through which Defendant can settle any outstanding debt. (*Id.*, ¶¶ 12-13). Defendant also tells Debtors that they can avoid payment to Plaintiff by claiming "financial hardship." (*Id.*, ¶ 15).

Through these false representations, Defendant induces Debtors to sign a Debt Relief Agreement ("Agreement"). (*Id.*, ¶ 17). In the Agreement, Debtors are required to deposit payments into a settlement account, which Defendant states will be used by Defendant to settle the debt owed by Debtors to Plaintiff. (*Id.*, ¶ 18-19). Defendant instructs Debtors to stop making payments to Plaintiff, causing a breach of contract and harm to Plaintiff. (*Id.*, ¶ 19).

Despite initial representations, Defendant does not begin negotiating with Plaintiff regarding debt settlement until it has collected a substantial amount of funds from Debtors. (*Id.*, ¶ 20). Thus, there is a period of time between Debtors discontinuing payments to Plaintiff and Defendant contacting Plaintiff. (*Id.*). As a result, Plaintiff is often forced to sue Debtors for breaching their contractual obligations. (*Id.*, ¶ 23).

When Debtors realize that Defendant is not performing its responsibilities under the Agreement, they will sometimes withdraw from the Agreement. (*Id.*, ¶ 21). Upon withdrawal, Defendant does not return the balance of funds to Debtors. (*Id.*, ¶¶ 21, 35). Instead, Defendant will

---

[4] *See* Sections II.B. and III.

deduct a fee for services rendered, despite such service not being performed, and only return the balance remaining to Debtors after the fee is deducted. (*Id.*, ¶¶ 21-22). As a result, Debtors are financially unable to settle debt with Plaintiff or remedy any default with Plaintiff. (*Id.*, ¶¶ 23, 37). Moreover, Defendant's actions prevent Plaintiff from providing real debt relief assistance to Debtors such as enrolling them in programs that are intended to help get payments back on track. (*Id.*, ¶ 36).

If Debtors are sued by Plaintiff when still enrolled in the Agreement, Defendant will offer legal services to Debtors, so long as Debtors make an additional payment for legal-specific fees. (*Id.*, ¶ 24). Defendant, under the Agreement, hires a Maryland attorney to represent Debtors in state court. (*Id.*, ¶ 25). The Maryland attorney communicates solely with Defendant, rather than with the Debtors, and the Debtors have no control over the state court litigation. (*Id.*, ¶¶ 25-26). According to Plaintiff, the attorneys hired by Defendant fail to communicate with Plaintiff's attorney(s), respond to discovery, and fail to provide settlement offers from Plaintiff to Debtors. (*Id.*, ¶¶ 26-27).

The Second Amended Complaint chronicles allegations related to thirty-one different Debtors. (Second Amended Complaint, ¶¶ 39-261). For instance, on December 10, 2019, Plaintiff provided a small business loan to Logan Gardens, Inc. ("Logan Gardens") and entered into a loan agreement. (*Id.*, ¶ 39). Pursuant to the loan agreement, Logan Gardens' payback amount was $210,250. (*Id.*, ¶ 41). On June 23, 2020, Defendant contacted Logan Gardens by telephone to sell it debt relief services. (*Id.*, ¶ 42). Defendant falsely accused Plaintiff of providing a usurious loan to Logan Gardens and promised to reduce outstanding debt. (*Id.*, ¶¶ 43-44). At this time, Logan Gardens had not missed any payments owed to Plaintiff. (*Id.*, ¶ 46).  On the same day, Logan Gardens entered into an Agreement with Defendant. (*Id.*, ¶ 45). Thereafter, Logan Gardens

discontinued payments to Plaintiff. (*Id.*, ¶ 48). After securing payments from Logan Gardens by telephone, Defendant intentionally failed to provide any debt relief services. (*Id.*, ¶ 49). On or about August 17, 2020, Logan Gardens realized that Defendant was misleading about its services and withdrew from the Agreement it signed with Defendant. (*Id.*, ¶ 50). Although Logan Gardens and Plaintiff managed to work out a payment plan for resuming payments, Plaintiff suffered over $30,000 in damages due to Defendant. (*Id.*, ¶¶ 59-60).

The process outlined above applies to various other Debtors with certain variations. In many instances, for example, Plaintiff is forced to sue Debtors and Debtors ultimately do not resolve their outstanding debt. (*See Id.*, ¶¶ 61-261).

### B. Procedural Background

On March 30, 2021, Plaintiff filed its Complaint. (ECF No. 1). Plaintiff advanced two causes of action: Count I, violation of the Telemarketing Sales Rule[5] ("TSR") 16 C.F.R. § 310.4(a)(5); and Count II, Tortious Interference with Contract, in violation of Maryland law. On March 31, 2021, Plaintiff filed an Amended Complaint, which advanced the same factual allegations, however the Plaintiff attached a number of additional exhibits. (ECF No. 2). Plaintiff served Defendant with the Amended Complaint on May 21, 2021. (ECF No. 10). On June 11, 2021, Defendant filed a motion for an extension of time to file a response, which was granted. (ECF Nos. 6, 9). On July 9, 2021, Defendant submitted its Answer, in which it raised nine affirmative defenses, including a failure to state a claim upon which relief can be granted and a lack of personal jurisdiction. (ECF No. 11, p. 9).

On January 12, 2022, Plaintiff filed a letter request to file a second amended complaint. (ECF No. 36). In the letter, Plaintiff averred that it would advance the same legal claims as it did

---

[5] The TSR implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108.

in the Amended Complaint, however, the proposed amended complaint would identify thirty-one Debtors with whom Defendant had contact. According to Plaintiff, the amendments sought to address a jurisdictional discovery issue raised by Defendant. (*Id.*). On January 26, 2022, Defendant filed a request to amend the Scheduling Order to account for Plaintiff's filing of a second amended complaint. (ECF No. 40). On February 24, 2022, the Court granted the Plaintiff's request to file an amended complaint. (ECF No. 41). On March 7, 2022, Plaintiff filed the Second Amended Complaint. (ECF No. 42). As Plaintiff represented, the Second Amended Complaint maintains the same causes of action, i.e., Count I still alleges a violation of 16 C.F.R. § 310.4(a)(5); and Count II still alleges Tortious Interference with Contract. In brief, Plaintiff alleges that Defendant, through its telephone contacts with Debtors, violates the TSR when it requests and retains fees from Debtors prior to rendering debt relief services, and Defendant tortiously interferes with Plaintiff's contracts with Debtors through the false representations it makes during its telephone contacts with Debtors.

On March 21, 2022, Defendant filed a Notice of Intent to File a Motion to Dismiss. (ECF No. 43). On March 29, 2022, the Court issued a Letter Order directing the Defendant to clarify its letter request for the Court to amend the Scheduling Order. (ECF No. 46). The Defendant filed a response to the Court's Letter Order on March 30, 2022. (ECF No. 47). Thereafter, the Court denied the Defendant's request for the Court to amend the Scheduling Order and ordered the Plaintiff to file a response to Defendant's Notice of Intent to File a Motion to Dismiss. (ECF No. 48). Plaintiff filed its response on April 18, 2022. (ECF No. 49). On May 16, 2022, the Court held a telephonic conference with the parties. (ECF No. 54). Subsequently, the Court set the briefing schedule for Defendant's Motion. (ECF No. 55).

Defendant filed its Motion, which Plaintiff opposed. (ECF No. 57) ("Opposition"). Defendant submitted its Reply. (ECF No. 58) ("Reply").

## II.   LEGAL STANDARDS

### A.  Motion to Dismiss—Rule 12(b)(2)

Defendant has moved to dismiss both of Plaintiff's claims for lack of personal jurisdiction pursuant to Fed R. Civ. P. 12(b)(2). (Motion, pp. 7-8). When advancing a Rule 12(b)(2) challenge, a defendant "must affirmatively raise a personal jurisdiction challenge, but a plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *See UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020). In particular, a plaintiff bears the burden "to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, when a "court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make prima facie showing of personal jurisdiction." *Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003).

### B.  Consideration of Documents Outside of Pleadings—Rule 12(b)(2)

In general, when a motion is filed pursuant to Fed. R. Civ. P. 12(b)(2), a court has considerable leeway in reviewing documents outside of the pleadings. *See Structural Pres. Sys., LLC v. Andrews*, 931 F. Supp. 2d 667, 671 (D. Md. 2013). Unlike when resolving a 12(b)(6) motion, a court may consider documents outside of a complaint. *Compare 68th St. Site Work Grp. v. Airgas, Inc.*, Civ. No. SAG-20-3385, 2021 WL 4255030, at *5 (D. Md. Sept. 16, 2021) ("A court is permitted to consider evidence outside the pleadings in resolving a motion to dismiss for lack of personal jurisdiction"); *Akali Scientific, LLC v. Wang*, Civ. No. GLR-21-2827, 2022 WL 4484071, at *2 (D. Md. Sept. 27, 2022) (same), *with Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d

159, 165-66 (4th Cir. 2016). However, even when documents from outside the complaint are considered, the plaintiff still only needs to make a prima facie showing of personal jurisdiction unless an evidentiary hearing is held. *See Universal Leather, LLC v. Koro AR, SA*, 773 F.3d 553, 558 (4th Cir. 2014); *Tusha v. Greenfield*, Civ. No. GLR-20-2143, 2021 WL 1530211, at *2 (D. Md. Apr. 19, 2021) ("If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, the plaintiff need only make a prima facie showing of personal jurisdiction") (internal citation omitted).

Accordingly, here, the Court may consider the documents attached to Plaintiff's Complaint. (*See e.g.*, Second Amended Complaint, Exs. 1, 2, 42). In addition, the Court may consider the Plaintiff's UCC-1 filings that Defendant attached to its Motion and Plaintiff incorporated into its Complaint by reference. (*See, e.g.*, *Id.*, ¶¶ 10, 31, 280; *see also* Motion, Exs. A-B).

## III.   DISCUSSION

Defendant argues that this Court lacks personal jurisdiction because the facts relevant to Counts I and II took place outside of Maryland. Specifically, Defendant contends that the operative facts are the phone calls that it made to thirty-one Debtors, and none of those phone calls took place within Maryland. As such, Plaintiff has failed to allege an injury that arises out of or relates to Defendant's contact with Maryland, and, pursuant to Rule 12(b)(2), dismissal is required.

Plaintiff contends that Defendant engaged in activities within Maryland which are related to the instant litigation. By Plaintiff's account, it makes a prima facie showing of personal jurisdiction when it alleges: (1) Defendant targets Debtors by searching Plaintiff's UCC-1 filings; (2) Defendant induces Debtors to breach their contracts with Plaintiff during telephone calls through promises and false representations; (3) Debtors breach their contracts with Plaintiff,

7

causing an injury in Maryland; (4) Defendant enters into Agreements with Debtors; (5) Defendant requests and retains fee payments from Debtors; (6) Defendant, after Debtors breach their contracts, contacts Plaintiff to renegotiate the debt obligations of Debtors to Plaintiff; and (7) Defendant, after Debtors breach their contracts with Plaintiff, retains Maryland counsel who represents Debtors in state court litigation against Plaintiff. (Individually, e.g., Jurisdictional Fact No. 1 through Jurisdictional Fact No. 7; collectively, the "Jurisdictional Facts"). (Second Amended Complaint, ¶¶ 10-29). The Court will consider each of these arguments in turn.

In order to determine whether a plaintiff establishes a prima facie case of personal jurisdiction, a court "must take all disputed facts and reasonable inferences in favor of the plaintiff." *Tyler-Simms v. Vineyard Vines Retail, LLC*, Civ. No. GJH-20-3081, 2021 WL 3080064, at *2 (D. Md. July 20, 2021).  This analysis must be done in accordance with the Maryland long arm-statute and the United States Constitution. *Grayson v. Anderson*, 816 F.3d 262, 270 (4th Cir. 2016); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993); *see also* Fed. R. Civ. P. 4(k)(1)(A) (a federal district court may exert personal jurisdiction over a defendant in accordance with the law of the state where the court sits).

In Maryland, courts have "consistently held that the purview of [Maryland's] long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567, 576 (Md. 2005); *Tyler-Simms*, 2021 WL 3080064, at *2. Accordingly, the "statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Stover v. O'Connell Assocs., Inc.* 84 F.3d 132, 135-36 (4th Cir. 1996); *Rivera v. Altec, Inc.*, Civ. No. ELH-21-0681, 2021 WL 2784265, at *6 (D. Md. July 2, 2021).

A court's exercise of personal jurisdiction over a defendant is proper if the defendant has "minimum contacts" with the forum state, such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice*." Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific jurisdiction is appropriate when: (1) a defendant "purposefully avails itself of the privilege of conducting activities within the forum State;" (2) the plaintiff's claims, "arise out of or relate to the defendant's contact with the forum;" and (3) the exercise of personal jurisdiction would be "constitutionally reasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Ford Motor Co. v. Montana Eight Judicial Dist. Court*, 141 S. Ct. 1017, 1025 (2021); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). If a court finds that personal jurisdiction is lacking, then the claim must be dismissed. *See Rivera*, 2021 WL 2784265, at *12 (dismissing case for lack of general or personal jurisdiction).

Defendant's core contention is that the actions that give rise to the instant litigation took place outside of Maryland. Specifically, Defendant asserts that the only activities that are relevant to the personal jurisdiction analysis are the phone calls between Defendant and the thirty-one Debtors related to the business debt resolution services. (Motion, p. 8). Defendant argues that neither Defendant nor any of the thirty-one Debtors are located inside Maryland. (*Id.*). On the other side of the ledger, Plaintiff does not contend that Defendant is located within Maryland. Plaintiff pleads that Defendant is a "Florida limited liability company." (Second Amended Complaint, ¶ 2). In addition, according to Plaintiff's UCC-1 filings, none of the Debtors are located within Maryland. (Motion, Exs. A-B). The Second Amended Complaint does not plead that the Debtors are located in Maryland nor that the business debt resolution services phone calls ("phone calls") between the Defendant and Debtors occurred in Maryland. Also, nowhere in the pleadings does Plaintiff oppose Defendant's assertion that there are no facts to establish that any of the phone calls

between Defendant and Debtors took place in Maryland. Therefore, even when viewing all of the allegations in the light most favorable to Plaintiff, the Court finds that none of the phone calls took place within Maryland.

Nonetheless, Plaintiff argues that this Court has personal jurisdiction because the phone calls caused an in-state injury and the Defendant engaged in multiple activities that "relate" to the instant litigation. (*See* Opposition, pp. 5-11). As an initial matter, construing the facts in Plaintiff's favor, the Court does find that Jurisdictional Fact Nos. 6 and 7 establish that Defendant "purposefully availed" itself of the privilege of conducting business within Maryland. Jurisdictional Fact Nos. 6 and 7 (i.e., Defendant contacting Plaintiff to renegotiate Debtors' financial obligations to Plaintiff and retention of Maryland counsel) are sufficient to establish purposeful availment as they reflect continuous contact and activities in the state that occurred between in or about May 2020 and March 2021. (*See* Second Amended Complaint, ¶¶ 64; *see also id.*, Ex. 10, 42). Thus, the Plaintiff satisfies the first prong of the three-part specific jurisdiction test. *See ALS Scan*, 293 F.3d at 712-13.

Next, the Court must determine if Plaintiff adequately established that the alleged injuries "arise out of or relate to" Defendant's in-state conduct. *See ALS Scan*, 293 F.3d at 712-13. Plaintiff pleads injuries related to a TSR violation under Section 310.4(a)(5) and Tortious Interference with Contract. Plaintiff asserts that it suffers an injury from the alleged TSR violation because the Defendant requests and receives fee payments from Debtors, which subsequently prevents Debtors from maintaining their financial obligations to Plaintiff. Plaintiff also asserts that the injury related to Defendant's alleged Tortious Interference with Contract is the financial loss due to Debtors breaching their contracts. (Second Amended Complaint, ¶¶ 279-86).

To determine whether Plaintiff adequately pleaded that its injuries arise out of or relate to Defendant's in-state conduct, the Court will analyze Count I and Count II and determine which Jurisdictional Facts either caused or are related to the alleged injuries.

1. <u>Jurisdictional Facts Analysis-Count I</u>

According to Section 310.4(a)(5) of the TSR, the following conduct is unlawful:

> (a) It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:
>
> (5)(i) Requesting or receiving payment of any fee or consideration for any debt relief service until and unless:
>
> (A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer.

16 C.F.R. 310.4(a)(5).

Analyzing Section 310.4(a)(5), the Court finds that Jurisdictional Fact Nos. 4 and 5 certainly relate to the injury alleged. Defendant entering into an Agreement with Debtors and receiving payment prior to rendering services are necessary facts for Plaintiff to prove its TSR claim under Section 310.4(a)(5). However, Defendant did not enter into Agreements with Debtors in Maryland. (*See* Second Amended Complaint, ¶ 17; *Id.*, Ex. 1). Similarly, Defendant, a Florida company, did not retain fees pursuant to the Agreement in Maryland. In addition, Plaintiff alleges that the Agreements were induced through telephone calls, which, as previously held, did not occur in Maryland. (*Id.*, ¶¶ 12-13).  Next, Jurisdictional Fact Nos. 6 and 7 did occur in Maryland, but they took place **after** the retention of fees by Defendant.[6]

---

[6] *See* Section III.3 *infra*.

2. <u>Jurisdictional Facts Analysis-Count II</u>

Under a Tortious Interference with Contract claim, Plaintiff needs to establish the following:

> (1) a contract exists between the plaintiff and a third party; (2) the defendant knows of that contract; (3) the defendant intentionally interferes with that contract; (4) the third party breaches that contract; and (5) the plaintiff suffers damages from the breach.

*Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675 (D. Md. 2012).

When construing the facts pleaded as true, Jurisdictional Fact No. 1 establishes Defendant's knowledge of Plaintiff's contracts with Debtors. Jurisdictional Facts Nos. 2 and 3 establish inducement to breach contract and actual breach. However, Defendant induced Debtors to breach through telephone calls that did not occur within Maryland. Although Jurisdictional Fact No. 3 does demonstrate an in-state injury to Plaintiff, the Court cannot exercise jurisdiction over Defendant without additional, relevant in-state conduct by the Defendant. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 2017) ("The place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, [but] it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld"); *Consultant Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (same). Therefore, as with Count I, the Court must determine whether Jurisdictional Facts 6 and 7 aid Plaintiff in making a prima facie showing of personal jurisdiction related to Count II.

3. <u>Consideration of Jurisdictional Fact Nos. 6 and 7</u>

To determine whether Plaintiff has adequately pleaded personal jurisdiction, the Court must determine the relevance of Jurisdictional Fact Nos. 6 and 7, if any, to this Court's personal jurisdiction analysis related to Counts I and II.

Here, the Court finds instructive *CresCom Bank v. Terry*, Civ. No. PMD-12–63, 2012 WL 3115929, at *3 (D.S.C. July 31, 2012). In *CresCom*, the plaintiff alleged that the defendant breached his guaranty agreement with plaintiff by failing to fulfill the financial obligations of various loans plaintiff made to companies owned by the defendant. *Id.* at *1. The defendant asserted that the court lacked personal jurisdiction and moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). *Id.* The defendant contended that for the purposes of establishing personal jurisdiction, the defendant's only relevant contact with the forum state was the execution of the guaranty agreement, which, on its own, is insufficient to establish personal jurisdiction. The defendant argued that all other contacts with the forum state, which included in-person meetings and telephone calls with the plaintiff, took place **after** the alleged breach of the guaranty agreement. As a factual matter, the court found that many of the meetings and telephone communications between plaintiff and defendant did not take place after the alleged breach of the guaranty agreement. As a result, the court found that the defendant had sufficient contacts with the forum state that were related to the cause of action to establish personal jurisdiction. *Id.* at *3. However, importantly, the court agreed with the defendant that the meetings and telephone calls that occurred **after** the breach were "irrelevant to the jurisdictional inquiry." *Id.* at *3, n.2; *see also Glynn v. EDO Corp.*, 536 F. Supp. 595, 606, n. 15 (D. Md. 2008) (personal jurisdiction cannot be substantiated by contacts with the forum state that occur after the cause of action arises); *Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 923 (D. Md. 1995) (same); *see also cf. Gatekeeper Inc. v. Stratech Systems, Ltd.*, 718 F. Supp. 2d 664 (E.D. Va. 2010) (facts failed to establish personal jurisdiction where plaintiff did not allege in-state conduct related to elements of the cause of action).  Accordingly, the court did not factor the meetings and calls into its holding that personal jurisdiction existed.

Similarly, in this case, the Court finds that Jurisdictional Fact Nos. 3, 6, and 7, even when viewing the facts in the light most favorable to Plaintiff, fail to establish that Plaintiff's injuries arose out of or relate to Defendant's in-state activities. Although Plaintiff pleads that the injury related to Counts I and II occurred in Maryland, it fails to allege relevant in-state activities that predate that injury. As in *CresCom*, the Court will not consider the in-state activities that took place after the injury occasioned. Put another way, the Court will not consider Jurisdictional Facts Nos. 6 and 7 because they took place **after** the retention of fees and breach of contract. Therefore, the only Jurisdictional Fact that supports this Court exercising jurisdiction in this case relate to the in-state injury. However, that fact alone is insufficient. *See ESAB Grp., Inc.*, 126 F.3d at 626.

Plaintiff's reliance on *Ford Motor Co. v. Montana Eight Judicial District Court*, 141 S. Ct. 1017 (2021), does not change the Court's view. The Plaintiff argues that Jurisdictional Fact Nos. 6 and 7 are sufficient to establish personal jurisdiction because although those facts were not the cause of Plaintiff's harm, they are "related" to such harm. (Opposition, pp. 10-11). In *Ford*, in which multiple cases were joined, the plaintiffs were injured by vehicles manufactured by defendant. *Ford*, 141 S. Ct. at 1022. The vehicles were produced in states other than the forum states. *Id.* The Supreme Court found that the forum states could still exercise personal jurisdiction because the respective injuries occurred in-state and the defendant had connections with the forum state that related to the injuries. Specifically, the Supreme Court held that the defendant "had systematically served [the] market" with products similar to the one that cause the tortious injury by way of advertisements, sales, and services. *Id.* at 1032.

The Court does not find persuasive Plaintiff's analysis of *Ford*. Although the Court agrees with Plaintiff that a defendant's activity need not cause an injury so long as it relates to the injury, the Court finds that any such activity must necessarily take place **prior** to an injury occurring. In

14

*Ford*, defendant had served the market **prior** to the injury through advertising, marketing, and sales. *Ford,* 141 S. Ct. at 1028.  Here, however, the alleged in-state conduct took place **after** the cause of action arose. Plaintiff alleges that Defendant violated the TSR and tortiously interfered with Plaintiff's contracts with Debtors on thirty-one different occasions. According to the Second Amended Complaint, the Defendant contacted Debtors by phone, induced Debtors to breach, and retained fees prior to rendering debt relief services. In every instance, only **after** Defendant had already retained fees in violation of the TSR and induced a breach of contract did Defendant reach out to Plaintiff or have Maryland counsel take any action in Maryland on behalf of Debtors. (*See, e.g.*, Second Amended Complaint, ¶¶ 20, 25, 28). Therefore, for each of the thirty-one instances, unlike in *Ford*, Defendant does not engage in conduct related to an injury in the forum state until **after** the alleged injuries occur. Accordingly, Plaintiff's reliance on *Ford* does not change the Court's holding that the Defendant's in-state activities fail to support a finding of personal jurisdiction.

In sum, the Court finds that it lacks personal jurisdiction because the injuries to Plaintiff did not arise out or relate to Defendant's in-state activities.  *ALS Scan*, 293 F.3d at 712-15.

Because the Court will dismiss Counts I and II pursuant to rule 12(b)(2) for lack of personal jurisdiction, the Court need not address the Defendant's Rule 12(b)(6) arguments. *See Richardson v. Mayor & City Council of Balt.*, RDB–13–1924, 2014 WL 60211, at \*4 (D Md. Jan. 7, 2014) ("[B]ecause this Court lacks jurisdiction, it need not address the other arguments raised").

**IV.     Conclusion**

For the foregoing reasons the Defendant's Motion is **GRANTED.** Counts I and II are

**DISMISSED WITHOUT PREJUDICE**.

The Clerk of the Court is directed to close the case.

Dated:  February 13, 2023                                    _____/s/_____

                                                             The Honorable Gina L. Simms
                                                             United States Magistrate Judge